DA 06-0523

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 12

PUBLIC LANDS ACCESS ASSOCIATION, INC.,

       Plaintiff and Appellant,

  v.

ROGER JONES, and the UNITED STATES OF
AMERICA BUREAU OF RECLAMATION,

       Defendants and Appellees.

APPEAL FROM:   District Court of the Ninth Judicial District,
                In and For the County of Teton, Cause No. 2003-DV-030
                Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          J. Devlan Geddes, Trent M. Gardner, Goetz, Gallik & Baldwin,
          Bozeman, Montana

      For Appellee Jones:

          John E. Bloomquist, Abigail J. St. Lawrence, Doney Crowley
          Bloomquist, Payne & Uda, P.C., Helena, Montana

          Maxon R. Davis, Davis, Hatley, Haffeman & Tighe, P.C.,
          Great Falls, Montana

      For Appellee U.S. Bureau of Reclamation:

          George F. Darragh, Jr., Assistant U.S. Attorney, Great Falls,
          Montana

Submitted on Briefs:  May 16, 2007

Decided:  January 16, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant Public Lands Access Association, Inc. (Association) appeals an order of the Ninth Judicial District, Teton County, dismissing with prejudice its complaint for declaratory and injunctive relief against Appellee Roger Jones (Jones). We reverse the District Court and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Jones is the owner of real property in Teton County, Montana. The Association is a non-profit organization which promotes access to public lands in Montana.[1] The Sun River Slope Canal Road (Canal Road) is located on real property owned by Jones in Teton County. The Canal Road was built between 1917 and 1919 by the authority of the Secretary of the Interior under the Reclamation Act of 1902, 43 U.S.C. § 371. The United States of America Bureau of Reclamation (Bureau) has had an express, nonexclusive easement over the Canal Road for irrigation and maintenance purposes since it was constructed.

¶3 According to the Association, Canal Road has been used by members of the public for many years in order to gain access to public lands. Jones has blocked access to public lands via the Canal Road by placing a chain and locked gates across it. On October 10, 2003, the Association filed suit against Jones in the Ninth Judicial District, Teton County, seeking a declaratory judgment that a public prescriptive easement was established by the

---

[1] In *Pub. Lands Access Assn., Inc. v. Jones*, 2004 MT 394, 325 Mont. 236, 104 P.3d 496, we affirmed a district court order granting a public prescriptive easement to the Association over a different right-of-way located on Jones's property known as Broadle Road. *Pub. Lands Access Assn.*, ¶¶ 33-34.

3

Association's members and the general public over the Canal Road. The complaint also sought an injunction against Jones to prevent him from impeding or otherwise interfering with use of the Canal Road.

¶4 After its complaint was filed, the Association continued to investigate whether other parties had interests in the portion of the Canal Road over which the Association claimed a public prescriptive easement. The Association discovered that the Greenfield Irrigation District (GID) possessed an easement in the Canal Road. Subsequently, the Association and the GID entered into an agreement stipulating that the Association's easement claim was not in conflict with any interests held by the GID in the Canal Road. In late 2005 the Association discovered the existence of the Bureau's easement over the Canal Road. On December 6, 2005, the Association joined the Bureau as a party defendant on the assumption that the Bureau "may have some right, title, or interest in the Sun River Slope Canal Road adverse to the [Association] and the public . . . ."

¶5 On March 17, 2006, the Association and the Bureau entered into a stipulated agreement (Stipulation) which resulted in the Bureau's dismissal from the suit. In the Stipulation, the Association and the Bureau both acknowledged that "[t]he Bureau owns a nonexclusive easement or right-of-way for the Sun River Slope Canal and its related maintenance road . . . ." However, the Bureau also acknowledged it had never blocked public use of the Canal Road and further that "[a]t no time since completion of construction of the . . . Sun River Slope Canal Road has a member of the public or the underlying private landowner(s) used the Sun River Canal Slope Road in a manner that is incompatible with or interferes with the use and enjoyment of the easement interests held

4

by the Bureau." In agreeing to dismiss the Bureau, both parties acknowledged that "this Stipulation, as stated herein, shall not be construed or used as any admission regarding the status, character, or nature, or use of the roadway, nor shall this stipulation be used to assert the validity or invalidity of said roadways as a public road, county road, or public right-of-way, where said road crosses the Bureau's land and premises." Moreover, the parties expressly agreed that nothing in the Stipulation "shall be deemed to impact the current rights of the Bureau or the Greenfields Irrigation District from prohibiting use of said roadway by third parties should said use interfere or become inconsistent with the Bureau's or the Greenfields Irrigation District's use of the Sun River Slope Canal Road, or to impose any obligations that the Bureau maintain said roadway for public use."

¶6  After the Bureau was dismissed from the suit, Jones moved to dismiss the Association's complaint under M. R. Civ. P. 12(b)(1), (2), and (6). Jones advanced several arguments in support of his motion. First, Jones asserted the Association's claim for a public prescriptive easement raised a dispute in title between it and the United States, that federal courts have exclusive jurisdiction over such title disputes pursuant to the Federal Quiet Title Act (FQTA), 28 U.S.C. § 2409a, and that therefore the Association's complaint could not proceed in state District Court. Additionally, Jones argued the exclusive jurisdiction of the federal courts over the Association's complaint meant that the District Court lacked subject-matter jurisdiction and personal jurisdiction over those claims as well. Finally, Jones argued that the Association's suit should be dismissed for failing to be commenced within twelve years of the date its claim accrued pursuant to 28 U.S.C. § 2409a(g).

5

¶7    The District Court granted Jones's motion and dismissed the Association's suit with prejudice. The District Court concluded that the Association's complaint "clearly challenges an interest in real property owned by the United States[,]" and thus must be dismissed for lack of subject-matter jurisdiction because "[t]he exclusive means to challenge an interest of the United States in real property is through the Federal Quiet Title Act, 28 U.S.C. § 2409a. *Block v. North Dakota* (1983), 461 U.S. 273, 103 S. Ct. 1811, 1819." The District Court observed the Bureau did not concede that Canal Road was a public road and reserved its right to prohibit public use at a later date. As a consequence, if the District Court were to grant the Association the relief it requested and declare the Canal Road a public road, then it "would have to find the Sun River Slope Canal Road *is* a public road when it passes over the easement owned by the Bureau of Reclamation and available to the public at all times, in contravention of the position of the Bureau in the Stipulation." Thus, a declaration of a public prescriptive easement over the Canal Road would require the District Court "to hold the interest claimed by [the Association] is superior to that of the United States." Consequently, the District Court dismissed the Association's complaint. The Association timely appeals from this order.

## ISSUE

¶8    We state the sole issue on appeal as follows:  Did the District Court err in dismissing with prejudice the Association's complaint against Jones?

## STANDARD OF REVIEW

¶9    "The question of whether a district court properly granted a motion to dismiss is a conclusion of law which we review to determine if the court's interpretation and

application of the law is correct." *Fleenor v. Darby Sch. Dist.*, 2006 MT 31, ¶ 6, 331 Mont. 124, ¶ 6, 128 P.3d 1048, ¶ 6. "When deciding a motion to dismiss based on lack of subject matter jurisdiction, a trial court must determine whether the complaint states facts that, if true, would vest the court with subject matter jurisdiction. A motion to dismiss should be construed in a light most favorable to the non-moving party and should not be granted unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief." *Bradley v. Crow Tribe of Indians*, 2003 MT 82, ¶ 12, 315 Mont. 75, ¶ 12, 67 P.3d 306, ¶ 12 (citations and quotations omitted).

## DISCUSSION

¶10     Did the District Court err in dismissing with prejudice the Association's complaint against Jones?

¶11     The resolution of this appeal turns on whether the FQTA requires that the Bureau be a party defendant to the Association's suit. If it does, then the Association's suit can proceed only in federal district court and the District Court in Montana would lack subject-matter jurisdiction. The pertinent language of the FQTA reads as follows:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights.

28 U.S.C. § 2409a(a).

¶12     The United States Supreme Court has held that FQTA "provide[s] the exclusive means by which adverse claimants c[an] challenge the United States' title to real

7

property." *Block*, 461 U.S. at 286, 103 S. Ct. at 1819. Federal courts are vested with exclusive jurisdiction for claims arising under the FQTA. 28 U.S.C. § 1346(f).

¶13 The Association maintains that the District Court erred in dismissing its complaint because the FQTA is not applicable to this case. The Association asserts that the FQTA applies only when there is adversity between a claimant and the United States, and that the Stipulation demonstrates there is no adversity between the Bureau and the Association here. Thus, the District Court may still entertain the Association's claims for declaratory and injunctive relief against Jones. The Association argues that *Leisnoi, Inc. v. United States*, 170 F.3d 1188 (9th Cir. 1999), supports its position.

¶14 Jones urges us to affirm, asserting that there does exist adversity and a dispute in title between the Bureau and the Association. As framed by Jones, the Association "raises a dispute as to the title of the real property at issue by seeking a declaratory judgment that the Canal Road is a public highway and that [the Association] and the public have a prescriptive easement over the Canal Road for 'all lawful purposes.' " Jones asserts that the FQTA applies even if the United States is not "openly hostile" to a claimant, because it requires only that the United States have an interest in real property and that title to that property be in dispute. Jones asserts that both of these requirements are satisfied in this case, and that dismissal of the Association's suit was therefore proper. In addition to *Leisnoi*, Jones claims that *Schilling v. Wis. Dept. of Nat. Resources*, 298 F. Supp. 2d 800 (W.D. Wis. 2003) and *Calf Island Community Trust, Inc. v. Young Men's Christian Assn. of Greenwich*, 263 F. Supp. 2d 400 (D. Conn. 2003), support his position.

¶15 The Ninth Circuit's decision in *Leisnoi*, relied upon by both parties on appeal, is instructive in the instant case. There, claimant Leisnoi, Inc., a certified Native village corporation, brought a quiet title action under the FQTA against the United States. Leisnoi was the owner of a piece of land in Alaska known as Termination Point, and wanted to sell it to the Exxon Valdez Oil Spill Trustees. *Leisnoi*, 170 F.3d at 1190. Termination Point was a parcel of land originally conveyed to Leisnoi by a federal grant from the United States government under the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1601. However, a third party named Stratman had previously filed a notice of *lis pendens* on Termination Point on behalf of the United States, based on the premise that Leisnoi did not actually qualify as a Native village under ANCSA, and thus was required to return Termination Point to the federal government. Leisnoi claimed this *lis pendens* cast a cloud on its title, impairing its ability to sell it to the Trustees.

¶16 Leisnoi initially filed a quiet title action against Stratman in the state courts of Alaska and was successful. *Leisnoi*, 170 F.3d at 1190. Leisnoi then filed a quiet title action against the United States under the FQTA in federal district court. In response, the government claimed no interest in Termination Point other than easements expressly reserved in the patents and other statutory restrictions, filed a disclaimer of interest, and argued that the district court lacked subject matter jurisdiction over the suit. *Leisnoi*, 170 F.3d at 1190-91. While refusing to recognize the disclaimer of interest, the federal district court did dismiss the suit for lack of subject matter jurisdiction.

9

¶17    On appeal, Leisnoi argued the district court's dismissal of the suit was in error.  In particular, Leisnoi argued that the FQTA grants jurisdiction "even when there is no asserted interest of the United States, of any kind, in the land in issue." *Leisnoi*, 170 F.3d at 1192.  However, the Ninth Circuit disagreed, stating that the FQTA "requires that the United States claim an interest and that title be disputed, in order for the United States to be made a defendant in an action." *Leisnoi*, 170 F.3d at 1192.  As a result, the Ninth Circuit concluded the following about the FQTA:

> For initial jurisdiction to lie, therefore, there must be a conflict in title between the United States and the plaintiff.  The peculiarity of this case is that, although the United States itself did not assert its interest in Leisnoi's title, a third party, Stratman, insisted that the United States had a claim to title.  This twist raises the question highly disputed by the parties: Can a third party's assertion that the United States has an adverse claim of title suffice to support initial jurisdiction under the Quiet Title Act?  We conclude that a third party's claim of an interest of the United States can suffice *if it clouds the plaintiff's title*.

*Leisnoi*, 170 F.3d at 1192 (emphasis added).

¶18    Accordingly, the Ninth Circuit focused its analysis on whether Stratman's *lis pendens* action, in light of Leisnoi's successful quiet title action in Alaska state courts, created a cloud over Leisnoi's title to Termination Point, thereby permitting Leisnoi to invoke the jurisdiction of the FQTA.  The Ninth Circuit held that it did not.  In particular, the Ninth Circuit found that Stratman's bare assertion of title on behalf of the United States in the face of an Alaska Superior Court decision granting a quiet title action in Leisnoi's favor, did not raise a cloud over Leisnoi's title sufficient to invoke the jurisdiction of the FQTA.  *Leisnoi*, 170 F.3d at 1193.  Accordingly, the Ninth Circuit concluded that "[a]t the time the complaint was filed, therefore, and indeed until well

10

after the district court had dismissed the action, there was no colorable conflict between an interest of the United States and an interest of Leisnoi in Termination Point." *Leisnoi*, 170 F.3d at 1193.[2]

¶19    Similarly, there is no colorable conflict of interest between the Bureau and the Association in this case. Thus, we reject Jones's argument that the Association's claims for a declaration of a public prescriptive easement against him must proceed under the FQTA. Simply put, Jones provides no authority for the proposition that a defendant in a property dispute can assert a property interest of the United States under the FQTA in order to remove the cause of action to federal district court, when the United States has been named as a defendant, knowingly and expressly disavowed a dispute in title between it and the claimant, and agreed to be voluntarily dismissed.

¶20    Under *Leisnoi*, a claimant can sue the United States under the FQTA, even if the United States itself does not actively claim a property interest, so long as a third party claims a property interest on behalf of the United States which clouds the claimant's title. *Leisnoi* does not, however, permit what Jones is attempting here—namely, the assertion of a property interest on behalf of the United States after the United States has disavowed such an interest, in order to remove an action to federal court under the FQTA. In this regard, the additional cases upon which Jones relies are distinguishable. *Schilling*, for

---

[2] After *Leisnoi* was decided, the Alaska Supreme Court vacated the quiet title decision of the Alaska Superior Court, leading to further litigation on the FQTA claims. See *Leisnoi, Inc. v. United States*, 267 F.3d 1019 (9th Cir. 2001) ("*Leisnoi II*"); *Leisnoi, Inc. v. United States*, 313 F.3d 1181 (9th Cir. 2002) ("*Leisnoi III*"). In *Leisnoi II*, the holding of *Leisnoi* on which we rely was affirmed. *Leisnoi II*, 267 F.3d at 1022-24 (discussing applicability of holding from *Leisnoi*). In *Leisnoi III*, the prior holdings of *Leisnoi* and *Leisnoi II* were not questioned or disturbed. *Leisnoi III*, 313 F.3d at 1183-84 (discussing *Leisnoi* and *Leisnoi II*).

instance, raised the question of whether the federal government could be sued under the FQTA when the lands involved were being held for the Lac Courte Oreilles Band of Indians in trust. *Schilling*, 298 F. Supp. 2d at 802-04. *Calf Island* is also inapplicable because the interest of the United States in disputed property in that case was clearly established given that the government actually initiated a condemnation proceeding concerning the disputed land; thus, the jurisdiction of the federal courts under the FQTA was both proper and unquestioned. *Calf Island*, 263 F. Supp. 2d at 402-03. Here, in contrast, having been apprised of all the facts and the precise nature of the Association's claims, the Bureau has expressly disavowed the notion that a public prescriptive easement over the Canal Road would create a dispute in title between its interests in the Canal Road and a public prescriptive use of that road.

¶21 Lastly, Jones asserts the title of the United States is in dispute simply by virtue of the Association's claim for a public prescriptive easement. Under *Leisnoi*, again, only the Association, not Jones, could join the Bureau if it wanted to ensure that its claims would be legally valid. That is, in fact, precisely what happened, with both the United States and the Association later agreeing there was no such dispute in title between them. Jones's argument for requiring the Association's claims to proceed under the FQTA is entirely dependent upon his view that a public prescriptive easement *ipso facto* would raise a dispute in title between the Association and the Bureau. However, neither the Bureau nor the Association share this view. According to the Stipulation, the use of the Canal Road which the Bureau holds under its written easement has not been in conflict with public use of the Canal Road for roughly ninety years. In fact, it is entirely plausible

12

that public use of the Canal Road would never be in conflict with the "nonexclusive" easement which the Bureau holds.[3]

¶22    Accordingly, a "disputed title to real property" between the Association and the Bureau, which is required for jurisdiction under the FQTA, does not exist here. While it is possible that the grant of use given to the Bureau could, at some point in time, be in conflict with the potential grant of a public easement, it would rest for the Bureau to challenge the Association's actions in District Court, and have the case removed to federal district court. Jones, however, provides no basis for creating such a conflict, and thereby bootstrapping the case into federal court under the FQTA.

¶23    For these reasons, we reverse the District Court's dismissal of the Association's suit. Because Jones failed to establish that the FQTA applies in this case, the District Court does have subject-matter jurisdiction over the Association's claims against Jones. Therefore, we remand the Association's cause of action to the District Court for further proceedings.

/S/ PATRICIA COTTER

---

[3] As a purely legal matter, there is no reason to assume that the Bureau's easement and a potential public prescriptive easement could not exist together. "An easement is a nonpossessory interest in land that gives a person the right to use the land of another for a specific purpose." *Taylor v. Mont. Power Co.*, 2002 MT 247, ¶ 11, 312 Mont. 134, ¶ 11, 58 P.3d 162, ¶ 11. As such, the Bureau's interest in the Canal Road is a grant of use, not a grant of title. *Taylor*, ¶ 24. A public prescriptive easement over the Canal Road may affect Jones's title in the estate, but not necessarily the Bureau's grant of use.

13

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS